IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS HOFFMAN, et al., | |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF TREASURY, et al., | Case No. 5:25-cv-04003-HLT-BGS |
| Defendants | |
| JEFFREY SOLAR, LLC, | |
| Defendant-Intervenor. | |

**MEMORANDUM AND ORDER**

President Biden signed the Inflation Reduction Act (IRA) in 2022. The IRA incentivizes renewable energy projects through two tax credit programs. The Internal Revenue Service (IRS) issued piecemeal regulations on these programs from April 2024 through January 2025. Neither the IRA nor the regulations require a taxpayer receiving these credits to conduct an environmental review under the National Environmental Policy Act (NEPA).

Plaintiffs are four Kansas landowners and the city of Rossville, Kansas. Their goal is to halt Jeffrey Solar, LLC from building a large-scale industrial solar power project close to their land and Rossville. They contend the tax credits incentivized the project and are concerned about the environmental impact of the project on their land and town. The project is in its preliminary stages. Land leases are in the option phase. County zoning regulations are not finalized, so no permits have been issued. Jeffrey Solar has not broken ground or claimed any tax credits. Despite the early stage, Plaintiffs bring various claims and ask the Court to universally enjoin the Federal Defendants from honoring the tax credits until any renewable energy project claiming the credits

undergoes NEPA review and to enjoin the County Defendants from continuing to consider draft county zoning regulations until a NEPA-style review is done for the Jeffrey Solar Project.[1]

The Court realizes this is a hotly contested case where each party feels strongly about its positions. But there are several fatal disconnects between Plaintiffs' claims and the governing analytical framework. These disconnects mean Plaintiffs lack standing and fail to state a claim. Plaintiffs lack standing because there is a mismatch between their environmental concerns tied to construction of the Jeffrey Solar Project and the tax credits and regulations. And Plaintiffs fail to state a claim because they do not plausibly allege the substantial federal control and responsibility necessary to trigger NEPA review. The Court dismisses all claims without prejudice, grants the motions to dismiss, and denies as moot the motion for preliminary injunction.[2]

I.   **BACKGROUND**

   A.   **Federal Statutes and Regulations Involved.**

The federal part of this case involves the IRA and its regulations, NEPA, and the Administrative Procedures Act (APA).

   1.   **IRA.**

The IRA incentivizes renewable energy projects through two tax credit programs: the Investment Tax Credit (ITC) and the Production Tax Credit (PTC). The ITC provides a tax credit that covers 30% to 70% of the capital costs of new solar and wind energy projects. The PTC

---

[1] The asserted claims and theories quickly call to mind the Supreme Court's recent description of NEPA as a "1970 legislative acorn [that] has grown over the years into a judicial oak that has hindered infrastructure development 'under the guise' of just a little more process." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 2025 WL 1520964, at *9 (U.S. 2025) (citation omitted).

[2] Stand 4 the Land Kansas asked to file an *amicus curiae* brief in support of Plaintiffs' motion for a preliminary injunction. The Court has discretion whether to permit a nonparty to submit a brief. *Hammond v. City of Junction City, Kan.*, 2001 WL 1665374, at *1 (D. Kan. 2001). Courts generally accept briefs if they find the proffered information "useful or otherwise necessary to the administration of justice." *Id.* The Court ultimately does not reach the merits of Plaintiffs' preliminary-injunction motion. But the Court will nevertheless grant the motion to submit the brief in the interest of a complete record.

2

provides a tax credit based on the amount of renewable electricity production produced per kilowatt hour. These credits are provided for in the IRA itself and are self-executing. Both the ITC and PTC are transferrable, and proceeds from credit sales are tax-free income. Both require project completion before they can be claimed. The IRA has spurred substantial new investments in wind and solar projects.

Congress directed the U.S. Department of Treasury, a federal agency, to issue regulations and guidance to implement the IRA's changes to the tax code. *See, e.g.*, 26 U.S.C. §§ 6418(h); 45Y(f); 48E(i). The IRS accordingly published regulations in 2024 and 2025. The regulations do not address NEPA or require taxpayers claiming ITC or PTC to undergo NEPA review.

 2. **NEPA.**

NEPA is a procedural statute that requires federal agencies to consider the environmental impacts of their actions under certain circumstances. NEPA applies to federal agencies, not Congress, state governments, or private parties. *See* 42 U.S.C. § 4332. NEPA's goal is informed federal agency decision-making. *Seven Cnty. Infrastructure Coal.*, 2025 WL 1520964, at *3. To this end, it requires agencies to include a detailed statement "in every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Plaintiffs explain in their amended complaint what this might entail:

> A "detailed statement" of a "major Federal action" under NEPA results in Environmental Assessments ("EA") and an Environmental Impact Statement ("EIS"). These are often large, detailed documents that outline the potential environmental effects of a proposed major federal action. EAs must be completed within a year and can be up to 75 pages. An EIS includes a thorough description and discussion of each of the five statutorily required topics: (1) direct and indirect environmental impacts, (2) adverse and beneficial effects, (3) alternatives, (4) short- and long-term effects and relationships (i.e., cumulative effects), and (5) irreversible and irretrievable

> commitments of resources. The final requirement is full disclosure of all impacts to all interested parties and subsequently providing an opportunity for them to make and submit comments. An EIS must be completed within two years and can be up to 300 pages (excluding tables and appendices). Consistent with NEPA's policy of careful, informed decision-making where major Federal actions affecting the environment are involved, the creation and production of these required items is significant, laborious, and time-consuming.

Doc. 22 at 30-31; *see also* 42 U.S.C. § 4332(C).

### 3. APA.

The APA offers Plaintiffs an avenue to bring their NEPA claims. "NEPA does not provide for a private right of action" and therefore any relief must be sought under the APA. *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000). The APA only permits review of "final agency action." 5 U.S.C. § 704. "[A]gency action is final if it satisfies two requirements: 'First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Cure Land, LLC v. U.S. Dep't of Agric.*, 833 F.3d 1223, 1231 (10th Cir. 2016) (citations omitted). The plaintiff has the "burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of section 551(13)." *Colo. Farm Bureau Fed'n*, 220 F.3d at 1173.

### B. Facts.[3]

NextEra is Jeffrey Solar's parent company. NextEra wrote the Jackson County Board of County Commissioners in November 2022 to express interest in developing an industrial solar

---

[3] The following facts are drawn from Plaintiffs' amended complaint, supplemented for clarity by statements of counsel during the June 18 hearing. The Court has accepted the allegations in Plaintiffs' amended complaint as true.

project in the county. The project, referred to as the Jeffrey Solar Project, involves building a plant to generate solar energy on 5,000 acres. Jeffrey Solar has been negotiating Jackson County land leases to that end. It has entered leases for more than 9,400 acres. These leases are currently in option periods during which Jeffrey Solar can proceed or terminate. The proposed project is not on federal land and is scheduled to be completed in 2030. Jeffrey Solar may claim federal tax credits if it completes the project.

The project is in its preliminary stages. Jeffrey Solar has not broken ground. The Board of County Commissioners has not passed zoning regulations that would allow construction of a solar power plant. Neither has the County Zoning Commission issued any permits to construct or operate.

The individual plaintiffs each own property near or adjacent to the proposed location of the Jeffrey Solar Project. Rossville is nearby. Plaintiffs anticipate the Jeffrey Solar Project will be detrimental to their property, their use of their property, and the environment. Plaintiffs share concerns that the project will affect their recreational, aesthetic, and economic interests. They allege that they are likely to suffer injuries including increased risk of flooding, hazards to the safe operation of an airfield, diminution of property values, environmental harms, economic injuries, and deprivation of the use and enjoyment of property. Plaintiffs each also allege individualized harm unique to their property ownership and use. Rossville alleges its own unique injuries based largely on its extensive history of flooding.

## II.     ANALYSIS

Defendants move to dismiss Plaintiffs' amended complaint for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). The Court addresses Plaintiffs' federal claims first (against Federal Defendants) and then turns to Plaintiffs' state-law claim

(against County Defendants). The Court dismisses all claims, grants the motions to dismiss, and denies as moot Plaintiffs' motion for a preliminary injunction.

### A. Federal Claims.

Plaintiffs assert various claims under the APA challenging the regulations implementing the IRA's tax credit programs. Plaintiffs allege that issuing the regulations constitutes final agency action by Federal Defendants. Plaintiffs contend this final action (1) is contrary to law (specifically NEPA), (2) is arbitrary and capricious (because the regulations do not incorporate NEPA), and/or (3) constitutes agency action unlawfully withheld or unreasonably delayed (to the extent that the IRS intends to incorporate NEPA but has not done so yet). *See generally* 5 U.S.C. § 706.

The APA can be a vehicle to challenge final agency action. But Plaintiffs must have Article III standing and allege a plausible claim. They lack standing because there is a disconnect between their environmental concerns tied to construction of the Jeffrey Solar Project and the tax credits and regulations, and they fail to state a plausible claim because they do not plausibly allege the substantial federal control and responsibility necessary to trigger NEPA review. The Court addresses each shortcoming below.

#### 1. Constitutional Standing.

Federal Defendants and Jeffrey Solar raise a Rule 12(b)(1) challenge to Plaintiffs' Article III standing.[4] Courts are not "free-wheeling enforcers of the Constitution and laws." *Initiative &*

---

[4] Motions to dismiss for lack of jurisdiction under Rule 12(b)(1) can generally take two forms: a facial attack or a factual attack. "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). In that situation, the allegations in the complaint are accepted as true. *Id*. A factual attack looks beyond the operative complaint to the facts on which subject matter jurisdiction depends. *Id*. at 1003. Federal Defendants lodge a facial attack. Jeffrey Solar lodges a factual attack, attaching the declaration of Angelo Pirone. Pirone is the senior project manager for NextEra and provided helpful background information on the Jeffrey Solar Project. Plaintiffs' allegations are not contradicted by Pirone's declaration. The Court can resolve the jurisdictional challenges without resort to evidence outside Plaintiffs' amended complaint. The Court therefore resolves the Rule 12(b)(1) challenges as facial attacks.

*Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006). Article III of the Constitution specifically limits the jurisdiction of federal courts to cases and controversies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The case or controversy limitation requires that a plaintiff have standing." *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996); *see also Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015) ("One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing.").

Standing requires that a plaintiff have an actual stake in the controversy. *Brady Campaign*, 110 F. Supp. 3d at 1091. A plaintiff shows this by demonstrating "(1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)). The burden to establish these elements lies with the plaintiff. *See Initiative & Referendum Inst.*, 450 F.3d at 1087.

      **a.**      **Injury In Fact.**

Injury in fact is the first hurdle for Plaintiffs. The Tenth Circuit applies a specific test for this element in the NEPA context. A plaintiff alleging an agency violated the APA because it failed to comply with NEPA must show (1) an "increased risk of actual, threatened, or imminent environmental harm" due to agency action, and (2) the "increased risk of environmental harm actually injures its concrete interests by demonstrating either its geographical nexus to, or actual use of the site of the agency action." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996); *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 840 (10th Cir. 2019). The question turns on whether the increased risk of environmental harm due to the

7

agency's action will occur at a location in which the plaintiff has a concrete interest. *Rio Hondo*, 102 F.3d at 451; *Dine*, 923 F.3d at 840.

Injury in fact is absent here. The core problem is Plaintiffs fail to identify an agency action that increased their risk of environmental harm. Plaintiffs identify the final agency action they challenge as the IRS's regulations implementing the IRA because they do not incorporate NEPA requirements. But any increased risk of environmental harm predated the regulations. It is the IRA itself that created the increased risk; not the regulations that followed.[5] Indeed, statements Plaintiffs highlight from NextEra about the importance of the tax credits illustrate this point. *See, e.g.*, Doc. 22 at 36-38 (identifying multiple statements between October 2022 and October 2023). The statements Plaintiffs cite all <u>predate</u> the regulations but <u>postdate</u> the IRA.[6] The increased risks of environmental harm from the credits thus flow from the IRA (at best) and not its implementing regulations.

        **b.**        **Traceability.**

Traceability in the NEPA context poses a second hurdle for Plaintiffs. Traceability is the connection between a plaintiff's injury and the agency's failure to follow NEPA's procedures. *Rio Hondo*, 102 F.3d at 451-52; *Dine*, 923 F.3d at 843. A plaintiff establishes traceability by showing that the increased risk of environmental harm is "due to the agency's failure to substantively

---

[5] The Court pressed Plaintiffs' counsel on this point during the hearing. Counsel repeatedly conflated the act of Congress (the IRA) with the act of the agency (the regulations). The Court sought clarification on what the regulations substantively added that Congress had not already created. Counsel could not identify differences. Most importantly, counsel acknowledged that Congress created the tax credits themselves. Doc. 77 at 29. It is the tax credits that Plaintiffs claim incentivize renewable energy initiatives that threaten the environment and their property. Plaintiffs' alleged harm is therefore connected to an action of Congress, not to an action of a federal agency.

[6] This assumes that these statements do what Plaintiffs claim they do: permit the inference that the credits' existence increased their risks of environmental harm. But Plaintiffs also allege that NextEra began exploring the possibility of the project long before the IRA was even passed. NextEra began purchasing land lease options for the project in Jackson County as early as 2018. The IRA was not signed into law until 2022.

8

consider the environmental ramifications of its actions in accordance with [NEPA]." *Rio Hondo*, 102 F.3d at 452 (internal citations and quotation marks omitted).

There is a substantial disconnect between this prong of standing and Plaintiffs' claims. The agency "decision" Plaintiffs identify is the issuance of IRA regulations. The agency did not conduct a NEPA review before issuing the regulations. But Plaintiffs do not allege Federal Defendants should have (or practically could have) conducted a NEPA review to inform <u>the regulations</u>. Plaintiffs' counsel specifically disavowed such a claim during the hearing.

Plaintiffs seem to contend instead that the regulations are uninformed by NEPA review because they do not refer to NEPA or require NEPA compliance for renewable energy tax credits. This theory distorts how NEPA functions. NEPA's informed decision-making requirement refers to an agency's duty to gather and assess information about the environmental impact of a decision before it is made. Plaintiffs' theory instead would only require NEPA inquiries <u>at some point</u>, with respect to <u>some project</u>, neither of which is yet identified. The increased risk of environmental harm to Plaintiffs in this instance is therefore not caused by the "decision" Plaintiffs allege the IRS made here.

     c.  **Redressability.**

Redressability is the third hurdle. Redressability requires that the relief Plaintiffs request be capable of remedying the increased risks of environmental harm created by uninformed agency review. The problem is that the increased risks Plaintiffs complain of are independent of the regulations. They are therefore independent of any agency decision-making (informed or uninformed). And enjoining the regulations would not enjoin the credits Jeffrey Solar might be eligible to receive. Whatever the increased risks of environmental harm Plaintiffs might ultimately face from the project's construction and operation and whatever effect IRA tax credits might have

9

on that risk, enjoining the regulations will have no remedial effect. The tax credits will remain available.

Plaintiffs fail to establish any of the requirements for standing. This deprives the Court of jurisdiction over the case. But even if the Court had jurisdiction, Plaintiffs still fail to allege a plausible claim. The Court turns to that reason.

### 2.     Failure to State a Claim under NEPA.

Federal Defendants' second challenge is to the plausibility of Plaintiffs' claims under Rule 12(b)(6). A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). A court undertaking this analysis accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

Plaintiffs must establish there is a "major federal action" to plausibly state a claim under NEPA. NEPA defines a "major federal action" as an action that the agency determines is "subject to substantial federal control and responsibility." 42 U.S.C. § 4336e(10)(A).[7] NEPA <u>does not apply</u>

---

[7]   The Tenth Circuit has long-defined "major federal action" as "actions by the federal government . . . and nonfederal actions with effects that may be major and which are potentially subject to Federal control and

10

to non-federal actions "with no or minimal [f]ederal involvement where a [f]ederal agency cannot control the outcome of the project," or to "forms of financial assistance where a [f]ederal agency does not exercise sufficient control and responsibility over the subsequent use of such financial assistance or the effect of the action." *Id.* at § 4336e(10)(B)(i) & (iii).

This statutory definition and its exclusions might not be difficult to apply under ordinary circumstances. But this case is not ordinary because what Plaintiffs claim is the "major federal action" is anything but pellucid. *See, e.g.*, Doc. 59 at 5 (defining it as "funding the industry-wide construction of new industrial energy construction projects across the country"); 22 & 29 ("adoption of rules governing IRA tax credits"); 29 ("the decisions by the Federal Defendants on how to exercise their significant discretion in formulating regulations implementing the IRA tax credit scheme"); 30 ("interpret[ing], apply[ing], and administer[ing] the IRA tax credit scheme").

---

responsibility." *Ross v. Fed. Highway Admin.*, 162 F.3d 1046, 1051 (10th Cir. 1998). But Congress amended NEPA on June 3, 2023, adding an express definition for "major federal action." The statutory definition of "major federal action" is an action that the agency determines is "subject to substantial federal control and responsibility." 42 U.S.C. § 4336e(10)(A). The new statutory definition adds one modifier ("substantial") and omits another ("potentially").

The parties cite cases that predate the statutory definition with one exception. *Rocky Mountain Wild v. Dallas* was on appeal when Congress amended the statute. 98 F.4th 1263, 1297 (10th Cir. 2024). The appellants had filed their opening brief. But the appellees had not yet responded. The parties argued the case on January 16, 2024. The parties and the Tenth Circuit both applied *Ross*'s definition of major federal action. The Court's review of the *Rocky Mountain Wild* record indicates that the parties did not supplement briefing to alert the Tenth Circuit that *Ross*'s definition may no longer be viable. *See Appalachian Voices v. Fed'l Energy Reg. Comm.*, 2025 WL 1600153, at *19 (D.C. Cir. 2025) (Henderson, J., concurring) ("[A] lot of . . . atextual NEPA precedent is no longer good law . . . . As originally enacted, NEPA applied only to 'major Federal action[s] significantly affecting the quality of the human environment.' Following the Congress's 2023 NEPA amendments, *Minnesota Public Interest Research Group*—the landmark decision interpreting 'major federal action' to, in effect, cover any federal action is no longer good law."). *Rocky Mountain Wild* likely used *Ross* instead of the new statutory definition because the relevant agency acts predated the amendment. Or the party presentation principle (perhaps more accurately the party presentation presumption) may explain why the Tenth Circuit did not address the updated statutory language on its own. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (generally discussing principle).

The Court applies the statutory language because the challenge in this case post-dates the statutory amendment. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). But the Court is also mindful of its role and obligations in the system. The Court therefore notes that the definition applied in this case does not matter in this case; Plaintiffs fail to identify a major federal action under either definition. But the Court notes the dichotomy between the statutory language and *Ross*'s language so that it can be addressed when appropriate.

11

Their preliminary-injunction motion seems to suggest the major federal action is the IRA itself or its tax credits. *See* Doc. 24 at 2, 8, 9, & 11. But the parties largely focused their argument on whether the incentives created by the anticipated tax credits rendered the Jeffrey Solar Project itself a major federal action. *See, e.g.*, Doc. 59 at 24-29.

Given this lack of clarity, the Court asked Plaintiffs' counsel during the hearing what Plaintiffs contend is the major federal action here. Counsel's answers were dynamic. *Contrast* Doc. 77 at 90 (suggesting anything in the environmental realm is under federal control), *with* 91 (stating the action was implementing the regulations), *and* 92 (stating the entire IRA and the tax credits emanate from the federal government), *and* 92 (identifying the major federal action as the regulations), *and* 101 (identifying the major federal action as "the regulations and everything that happens because of the regulations"). Plaintiffs have unceremoniously created a fog around their claim and the framework. But it seems that Plaintiffs' final answer is that the major federal action is the issuance of the IRA regulations plus all its incentive effects.

The problem with Plaintiffs' "final answer" is that only the first part of the identified major federal action is actually subject to substantial federal control and responsibility: the issuance of the IRA regulations. The second part of the identified action is amorphous, uncertain, and almost entirely contingent on discretionary third-party decision-making in response to the first part. But the statutory definition of "major federal action" disclaims that such downstream effects fall within the term's definition. Specifically, 42 U.S.C. § 4336e(10)(B)(i)(II) excludes non-federal actions "with no or minimal Federal involvement where a Federal agency cannot control the outcome of the project." Likewise, subsection 10(B)(iii) excludes "loans, loan guarantees, or other forms of financial assistance where a Federal agency does not exercise sufficient control and responsibility over the subsequent use of such financial assistance or the effect of the action." These provisions

confirm that the reach of the major federal action stops where the federal control stops and does not extend to those actions' second and third order effects. The exclusionary language of the statute makes clear that it is the <u>action</u> of the federal agency that determines qualification. Independent acts by third parties may be an effect of a federal action. But they do not represent ongoing substantial control and responsibility.

Plaintiffs' claims fare no better if they claim the major federal action is the Jeffrey Solar Project itself. The project is not proposed on federal land. The federal government has not approved any portion of the project. Jeffrey Solar has not finalized the project, received permits, begun construction, claimed a tax credit, or sold a tax credit relating to the project. There is a complete absence of alleged facts showing that the federal government has substantial control and responsibility over the project. The amended complaint establishes that the Jeffrey Solar Project is a private undertaking that may begin if Jackson County passes regulations and permits it to move forward. Jeffrey Solar may seek tax credits when the project is complete. But there are no allegations identifying federal agency decisions limiting, controlling, or directing the subsequent use of any such credits. *See generally Colo. Conservation All. v. U.S. Fish & Wildlife Serv.*, 2024 WL 4457870, at *3-5 (D. Colo. 2024). Plaintiffs have alleged no facts indicating the Jeffrey Solar Project is subject to "substantial federal control and responsibility." Neither have they alleged that the IRS has determined it is. *See* 42 U.S.C. § 4336e(10)(A) (specifying that the "agency carrying out such an action" makes the determination).

For all these reasons, Plaintiffs fail to state a claim against Federal Defendants, even if they were able to overcome the Article III standing problem.[8]

---

[8] The NEPA statutory scheme contemplates that federal agencies will create a detailed statement "in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). No party has briefed whether this provision limits the need for a detailed statement to when an agency is making a "recommendation or report." Plaintiffs do not allege

B.   **State-Law Claim Against County Defendants.**

Plaintiffs assert one claim against County Defendants.[9] That claim is for violation of state law, specifically K.S.A. § 19-2964. Plaintiffs allege County Defendants violate this statute because they have crafted <u>draft</u> solar resolutions that unreasonably fail to require NEPA review.

This claim poses many potential problems. But there is one overarching jurisdictional bar that means Plaintiffs cannot bring this claim in federal court: they lack standing to do so.[10] The analysis here is slightly different than that for Federal Defendants. But its outcome is the same. The Court dismisses the claim without prejudice for lack of jurisdiction.

Plaintiffs challenge <u>draft</u> zoning regulations being discussed and considered by County Defendants. The Board of County Commissioners <u>may</u> adopt the regulations (which currently are in their seventh iteration). But first they will consider public comment (which is not yet open). Doc. 77 at 58. They <u>may</u> incorporate alterations. Then there must be a final vote. Jeffrey Solar then <u>may</u> apply for a conditional use permit to construct its solar energy project. But even that has not happened yet.

Standing requires an injury in fact that is traceable and redressible, as discussed *supra*. To show an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest

---

the IRS made a recommendation or report. This omission may serve as an independent reason for finding Plaintiffs fail to state a plausible NEPA claim. Likewise, the statutory scheme implicitly suggests that a major federal action involving financial assistance will be when the agency exercises "control and responsibility over the <u>subsequent use</u> of such financial assistance." 42 U.S.C. § 4336e(10)(B)(iii). This suggests that an after-the-fact tax credit may not statutorily represent an agency's ability to exercise control and responsibility over the funds. But again, the parties did not highlight this language. The Court does not rest its decision on either of these grounds.

[9]   County Defendants contend Plaintiffs fail to name the real party in interest. They cite K.S.A. § 19-105, arguing that parties suing a county should name the Board of County Commissioners, not the individual commissioners. K.S.A. § 19-105. Any such technical pleading error could easily be remedied by substitution of the appropriate party. The Court therefore does not rest its decision on that basis. *See Olson v. Sedgwick Cnty., Kan.*, 2024 WL 167372, at *4 (D. Kan. 2024).

[10]   The Court hopes Plaintiffs do not take this ruling as an invitation to refile against County Defendants in state court. It is not. The Court sees multiple problems with this claim. And it is disingenuous of Plaintiffs to suggest County Defendants violated the law by not requiring NEPA review when they also concede NEPA does not apply to County Defendants. Doc. 60 at 7.

14

which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Initiative & Referendum*, 450 F.3d at 1087 (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). But Plaintiffs fail to allege <u>any injury at all</u> due to County Defendants' conduct. They fail to allege a concrete, particularized injury that is not conjectural or hypothetical. Any scenario here is hypothetical. It is simply not plausible that a <u>draft</u> version of regulations that is going through the legislative process would provide a cause of action for failing to mention (or incorporate) a federal statute that does not apply to county government.

The Court lacks standing to adjudicate Plaintiffs' claim against County Defendants and dismisses it without prejudice.

### III. CONCLUSION

Plaintiffs' claims, arguments, and requested relief have been difficult to analyze. They are trying to use the procedural requirements of NEPA as a roadblock because they do not like what Congress has chosen to incentivize and what regulations Jackson County is considering. But those challenges must be made to the legislative branch, not to the judiciary. Plaintiffs' grievance (the anticipated environmental harms of the Jeffrey Solar Project) and the objects of their complaint (whether the IRA tax credits or the draft zoning regulations) are mismatched. Plaintiffs lack standing to raise their claims here.

Even if Plaintiffs had standing, NEPA does not offer Plaintiffs relief. NEPA's process protections are modest and apply only to federal agencies' decision-making. NEPA does not offer a mechanism for challenging what are essentially local land use decisions involving private interests, private activity, and principally private dollars on private property. And that is what

Plaintiffs do here. Plaintiffs' amended complaint fails to state a claim. The Court, if it had jurisdiction, would have dismissed the amended complaint for this independent reason.

THE COURT THEREFORE ORDERS that County Defendants' Motion to Dismiss (Doc. 31), Federal Defendants' Motion to Dismiss (Doc. 49), and Jeffrey Solar's Motion to Dismiss (Doc. 50) are GRANTED. All claims are DISMISSED WITHOUT PREJUDICE. The case is closed.

THE COURT FURTHER ORDERS that Plaintiffs' Motion for Preliminary Injunction (Doc. 24) is DENIED AS MOOT.

THE COURT FURTHER ORDERS that the motion for leave to file an *amicus curiae* brief (Doc. 73) is GRANTED.

IT IS SO ORDERED.

Dated: July 1, 2025                    /s/ *Holly L. Teeter*
                                                 HOLLY L. TEETER
                                                 UNITED STATES DISTRICT JUDGE